C4rkjtcc                    CONFERENCE

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    J.T. COLBY & COMPANY, INC., et
     al.,
4
                    Plaintiffs,
5
               v.                         11 CV 4060 (DLC)
6
     APPLE INC.,
7
                    Defendant.
8
     ------------------------------x
9                                         New York, N.Y.
                                          April 27, 2012
10                                        3:40 p.m.

11   Before:

12                    HON. DENISE COTE,

13                                        District Judge

14                      APPEARANCES

15   ALLEGAERT BERGER & VOGEL
          Attorneys for Plaintiffs
16   PARTHA PRATIM CHATTORAJ

17   QUINN EMANUEL URQUHART & SULLIVAN LLP
          Attorneys for Plaintiffs
18   ROBERT LLOYD RASKOPF

19   KIRKLAND & ELLIS LLP
          Attorneys for Defendant
20   DALE MARGARET CENDALI
     CLAUDIA ELIZABETH RAY
21   BONNIE LEIGH JARRETT

22

23

24

25

C4rkjtcc                         CONFERENCE

1              (In open court; case called)

2              THE COURT:  Welcome, everyone.

3              This case has been reassigned to me.  I know you had a

4    February 27th conference with Judge Forrest.  I have read the

5    transcript of that conference.  I know there's a governing

6    scheduling order in this case, with discovery to be concluded

7    June 15th, a summary judgment motion to be fully submitted

8    July 27th, and a trial date of October 22nd.  A protective

9    order has been issued in this case.

10             I have a dispute with respect to discovery issues, and

11   those are principally brought on by the letter from defense

12   counsel.  Plaintiff's counsel, in addition, raises the issue of

13   a desire to file an amended complaint.  There is a dispute

14   about whether or not consent will be given to that and the

15   impact it might have on any schedule that now exists in this

16   case.

17             There was a motion to withdraw as counsel of record

18   for the plaintiffs, and a reply declaration came in on that

19   motion, indicating that the motion is now moot.  I don't know

20   that that's actually true.  I think there probably is still a

21   motion for Manatt Phelps to withdraw and in fact to be replaced

22   by plaintiff's counsel who are here.

23             Is a lawyer for Manatt Phelps present in the

24   courtroom?

25             MR. CHATTORAJ:  I was informed by my colleagues at

C4rkjtcc                         CONFERENCE

1    Manatt Phelps that they will not be here today.

2              THE COURT:  It would have been a courtesy to the Court

3    for them to be present.  Thank you.

4              MR. CHATTORAJ:  I will convey that to them, your

5    Honor.

6              THE COURT:  Thank you.

7              Welcome, counsel for the plaintiffs, Mr. -- is it

8    Chattoraj?

9              MR. CHATTORAJ:  That's correct, your Honor, perfect.

10             THE COURT:  Thank you.

11             -- and Mr. Raskopf.

12             I plan to address any outstanding issues.  They

13   include who pays for the hard drive being processed,

14   confirmation that the hard drive is the only source of the

15   plaintiff's documents, scheduling of expert reports, scheduling

16   of the plaintiff's deposition, scheduling of the inspection of

17   the plaintiff's quote-unquote warehouse, and of course the

18   amended complaint issue.

19             With respect to the hard drive issue, I've read the

20   parties' submissions on that.  Does anyone have anything they

21   want to add briefly?  Mr. Chattoraj?

22             MR. CHATTORAJ:  Well, your Honor, it's my

23   understanding, based on my review of the correspondence between

24   the parties, that the hard drive cost-shifting issue is the

25   basis for Apple's counsel not to consent to the Manatt Phelps

C4rkjtcc                          CONFERENCE

1    firm's motion to withdraw.  That may well be buttressed by the

2    fact that we circulated fully executed stipulation to

3    substitute counsel yesterday, which has not been executed by

4    Apple's counsel.

5           So I suppose that my preference, unusually for

6    plaintiff, would be to let Ms. Cendali explain her

7    understanding of why it is that my client should pay the costs

8    associated with that hard drive, and then I can respond.  The

9    reason --

10          THE COURT:  She's already done that on paper.  I think

11   this has been addressed on paper by both sides.

12          MR. CHATTORAJ:  Very well, your Honor.

13          THE COURT:  I don't need any additional oral

14   statement, but I wanted to give you the opportunity to say

15   anything if you'd like to.

16          MR. CHATTORAJ:  Yes.  What I would like to say about

17   it is that I am indeed new counsel.  I may well not have made

18   the same strategic judgment as my predecessors, in providing

19   this hard drive to defense counsel.  It would have been my

20   preference to actually engage an e-discovery vendor and to

21   process that hard drive myself and review it before providing

22   it to the defense counsel.

23          Now, to some degree, that ship has sailed, and I

24   recognize that, and I certainly don't want to do anything to

25   impede the moving forward of the case and to move us as quickly

C4rkjtcc                          CONFERENCE

1    as possible toward the October 22nd trial date.

2            That being said -- I'm mainly inferring this, but also

3    based on conversations with my predecessor -- I understand that

4    the reason that the hard drive was provided to defense counsel

5    was because plaintiffs didn't wish to incur the cost of

6    actually doing the processing and so on.  For defense counsel

7    now to say, well, this isn't fair, you have to pay the cost of

8    doing this, sort of defeats the purpose of providing it.

9            So all I would say is, if the Court is inclined to

10   shift the costs in the way that defense counsel wishes, my

11   request, as an incoming counsel, would be to permit us to get

12   the hard drive back, perhaps get a certification from defense

13   counsel that they destroyed any copies and don't have any

14   copies, and ideally certification that they have not yet begun

15   to review it in light of their stated problem with the expense,

16   and that we would then process it in the ordinary course.  That

17   would be my fallback position if my predecessor's counsel's

18   position is not adopted by the Court.

19           THE COURT:  If what position is not adopted?

20           MR. CHATTORAJ:  My predecessor's view was that Apple's

21   counsel should pay the money, process it, produce information

22   and provide a copy set to us, to plaintiffs.

23           THE COURT:  Thank you.

24           MR. CHATTORAJ:  That is his position.  Thank you.

25           THE COURT:  Ms. Cendali.

C4rkjtcc                     CONFERENCE

1              MS. CENDALI:  Your Honor, not at the last conference,

2       whose transcript you alluded to, but the conference before

3       that, when the hard drive came up, I think the record was clear

4       that Judge Forrest said you need to comply with discovery,

5       plaintiff, you're the plaintiff in this case, you need to act

6       like the plaintiff, you can't just sit there and do nothing

7       because new counsel is coming in, and you have to produce your

8       documents.  And they said, OK.  And she gave a deadline, and

9       she said to them, if you're not going to produce by that

10      deadline, you need to give the hard drive to Ms. Cendali.  And

11      they said OK.

12              There was no discussion whatsoever about who would

13      bear the cost of that.  And we all read the Zubalake case, and

14      we all know that there needs to be a motion for that.  As we

15      said in our papers, it seems a little unseemly and usual -- we

16      have Manatt, we have two new firms, we have a litigation

17      planning firm, we have Mr. Colby, the sole proprietor of

18      plaintiffs, who has apparently homes on Shelter Island and Park

19      Avenue -- it seems odd for Apple having to fund its own lawsuit

20      against itself.  We believe that they should pay that cost.

21      It's already at the e-discovery vendor, they're working through

22      it.  It was delivered, the output, but we do think, it's their

23      responsibility and their cost.

24              There's been no showing of any of the factors that

25      would rise to cost-sharing.

C4rkjtcc                    CONFERENCE

1         THE COURT:  I've looked at the transcript of the

2   February 27th conference and in particular at page 36 of that

3   conference, where the hard drive issue does come up.  I agree

4   that there wasn't any specific or explicit discussion of the

5   cost-shifting issue, but the plaintiff was clearly given the

6   opportunity to process and produce responsive documents to the

7   defendant, chose not to, chose instead to provide the entire

8   hard drive to the defendant.  I am not going to shift the cost

9   to the defendant of the processing of the hard drive.  Apple

10  may serve an invoice on the plaintiff, and that must be paid

11  within two weeks of service of the invoice.

12        Can you confirm, Mr. Chattoraj, that the only source

13  of the plaintiff's documents is the hard drive?

14        MR. CHATTORAJ:  Your Honor, at this time I'm not in a

15  position to make that representation.  I do believe in fact

16  that there are hard copy documents that may exist that would

17  not be within that hard drive.

18        THE COURT:  And that were responsive to the discovery

19  demands already served on the plaintiff?

20        MR. CHATTORAJ:  I myself have not participated in a

21  search for documents, your Honor, so it would be speculation on

22  my part, so I'm not comfortable making a representation to the

23  Court based on mere speculation.

24        THE COURT:  Thank you very much.

25        I'm going to require any document production that

C4rkjtcc                              CONFERENCE

1    needs to be made to comply with the duties imposed by the

2    Federal Rules, be completed by next Friday.  That would be

3    May 4th.

4            Let's set a schedule for service of expert reports.

5    Is the plaintiff intending to call experts?  I know there was a

6    discussion at the February 27th conference of three potential

7    kinds of experts.  Is the plaintiff intending to call experts?

8            MR. CHATTORAJ:  Yes, your Honor.

9            THE COURT:  In what fields?

10           MR. CHATTORAJ:  We will be calling an expert in to

11   assess damages and evaluation of intellectual property at

12   issue.  We will be calling an expert on marketing and consumer

13   psychology, and will be -- it is currently something that we

14   are discussing, I don't want to make a commitment to this

15   because we have just gotten into the case strategic issue, but

16   if we were to call a third expert, it would be an industry

17   custom and practice expert on trademark search.

18           Your Honor --

19           THE COURT:  Let me ask the defendants:  Other than

20   rebuttal experts, is the defendant planning to call any expert

21   on an issue on which the defendant bears the burden of proof?

22           MS. CENDALI:  I don't think we bear the burden of

23   proof on it, but I know that plaintiffs apparently are not

24   calling a survey expert, which is typically the case in

25   trademark cases.  We think there are obvious reasons why

C4rkjtcc                          CONFERENCE

1    they're not planning on calling a survey expert, so most likely

2    we might want to do so affirmatively.

3           Your Honor, I don't know if this is the right time,

4    but as you're talking about service and expert reports, I did

5    want to discuss the issue of a schedule and the trial date, if

6    the Court will hear me on that.

7           THE COURT:  Have the parties discussed that with each

8    other --

9           MS. CENDALI:  No.

10          THE COURT:  -- the scheduling issues?

11          MS. CENDALI:  We didn't know until yesterday that they

12   were definitely coming in.  Since January there's been talk

13   that some firm or firms were going to come in.  The last

14   communication we heard was in an email to Judge Forrest to the

15   effect that they were still negotiating with their litigation

16   funding firm, so it wasn't until yesterday that counsel

17   appeared.

18          It seems most productive for us to initially have a

19   meet-and-confer and to try to work out a sensible schedule.  As

20   you can tell from the transcripts, your Honor, initially Apple

21   was doing everything it could to try to meet the existing

22   schedule, but as absolutely nothing has happened, we're now at

23   the point of where we have extreme prejudice; we have to cram

24   six months of discovery into a very short period of time.

25          THE COURT:  We're going to take a recess for about ten

C4rkjtcc                       CONFERENCE

minutes.  So, Counsel, I'm going to ask you to meet and confer

with respect to the issues that I have listed and any issues

you want to add to the list.  And I will take this criminal

matter and then we'll reconvene.

     MS. CENDALI:  May we go out in the hallway, your

Honor?

     THE COURT:  Yes.

     MS. CENDALI:  Thank you.

     MR. RASKOPF:  Thank you, your Honor.

     (Recess)

     THE COURT:  So Ms. Cendali, do you have agreement?

     MS. CENDALI:  Yes, your Honor.  We have had the most

productive ten minutes we have had in this case so far.

     We agree that, with your Honor's permission obviously,

that it would make sense to move the trial date, given the

state of discovery.  What we have agreed to, for your Honor's

consideration, is a proposed schedule for the close of fact

discovery for August 15th; affirmative expert reports,

September 15th; rebuttal expert reports, October 26th; close of

expert discovery, November 23rd, Daubert motions, summary

judgment motions, dispositive motions, et cetera,

December 21st; opposition briefs to such motions, January 25th,

taking into account the holidays; reply briefs to such motions,

February 5th; and then beyond that, we thought it was really up

to you.  Some judges say, I'll give you a trial date once I

C4rkjtcc                    CONFERENCE

1   know what I want to do at that point.  That's actually what we

2   would prefer, but that's one thing that we agreed to.

3           We have also discussed, and I can report on, the

4   status of various other discovery issues that you mentioned

5   that relate to our letter.  Would you like me to do that at all

6   once?

7           THE COURT:  Sure.

8           MS. CENDALI:  OK.

9           With regard to the amended complaint, we had consented

10  to the draft that we had been shown by Manatt, but new counsel

11  has said that they would like the opportunity to review the

12  pleadings and may do a different amendment, and we have agreed

13  that if and when they do that, we will look at it and we'll see

14  where we are as to whether we consent or not.

15          With regard to the deposition of Mr. Colby, at the

16  time of the letter we were needing a hard date because we

17  didn't get the hard date.  At this point we, Apple, are not

18  asking to set a date certain for his deposition today, on the

19  theory that we need to see what the documents will show and

20  that we will hopefully amicably reach a mutually agreeable date

21  with new counsel.  They have indicated that they will produce

22  him.  And until, and if, there's an issue, we don't need you to

23  get into that level of minutia.

24          With regard to the issue of the inspection, what we

25  want is to inspect both of Mr. Colby's and his company's

C4rkjtcc                          CONFERENCE

premises.  There is the New York address, which is the address

in the complaint, and on their website is their business

address, and then we have learned there is also his Shelter

Island address, which apparently where he -- also is perhaps

referred to for his website.  So we want to inspect both of

those premises and take video and a picture of the business

premises and see what's there, see what signage is up, see if

it really is a business premise or not, and the like.

        Previous counsel had had two objections to that.  One

of them was that they didn't want us to go to the New York

address.  And they said, well, it's not really a business

address.  And we said, well, since it's the address in the

complaint and in your website, it would be relevant to our

overall position that this is an opportunist plaintiff, an

opportunist who's trying to get a windfall from Apple; we'd

like to see what's at that address regardless.

        And then the second issue was the plaintiff's previous

counsel had said we'd be limited to only taking photographs of

books as opposed to something else about the premises.  And our

position was, we shouldn't be so limited.  Of course rights

would be reserved for whatever motions in limine might be

appropriate, but if there is or isn't signage or anything else

like that, I think we're entitled to present that.

        We raised both of these issues with new counsel.

Correct me if I am wrong, but they were not willing to commit

C4rkjtcc                          CONFERENCE

1    to this issue.  We are concerned about potential spoliation and

2    other issues with regard to this.  We have been pressing for

3    this for a long time.  So we really would like the right, and

4    we respectfully request that the Court issue an order letting

5    us inspect both premises along the lines that I just said.

6             THE COURT:  Mr. Chattoraj?

7             MR. CHATTORAJ:  Yes, your Honor.  My view is that to

8    the extent that Apple is raising what we view as sort of a

9    spurious issue as to whether or not my client has a bona fide

10   business, we think in the first instance document production,

11   much of which will probably be on this hard drive, will clearly

12   show a large volume of sales and large volumes of dollars and

13   books being sold year in and year out over a very long period

14   of time, in fact, a much greater period of time than that

15   within which Apple has sold books.  So, to the extent that the

16   effort is to show up at my client's business addresses and sort

17   of try to make his business look like a sort of less than it

18   is, in this era of sort of virtual businesses and online

19   businesses, it's not clear to me why these inspections are

20   necessary.

21             That being said, based on my somewhat limited

22   conversations with my client and my predecessor, I just feel

23   like -- when I said I wasn't willing to commit, it's because I

24   just don't have a well articulated understanding of the basis

25   of the objections.  My feeling is that this case is going to be

14

1   decided based on, for example, the documents and the other

2   evidence showing the sales and so on.  And I think that this

3   allegation that it's a de minimis business is going to rapidly

4   fall by the wayside once we actually get into the discovery.

5        But at the same time, as a trial lawyer, I really

6   think that you could do a lot with photographs that could be

7   helpful to both sides, so I don't have strong feelings about

8   it.  And my view is simply that I'd like to reserve judgment on

9   withdrawing objections until I at least have a better

10  understanding of what those objections are.  I think I'd be

11  doing a disservice to my client.

12       THE COURT:  That's fair enough, Mr. Chattoraj.  I'll

13  let you notify Ms. Cendali about your position on Tuesday.  And

14  if there remains a dispute on this, I'll hear counsel later in

15  the week and we'll resolve this next week.  You should assume

16  that any inspection will take place the following week; that is

17  ordered.  So we'll get the inspection done and behind us if

18  there's going to be one.

19       MR. CHATTORAJ:  Very well, your Honor.  Thank you.

20       THE COURT:  Good.

21       Ms. Cendali, did you have a further report to me?

22       MS. CENDALI:  Yes.  The last issue we had just started

23  to talk about, but you had asked to tee up with you whatever

24  else there was, and this issue wasn't specifically in the

25  letters, I don't think, because it was more recent, and that

C4rkjtcc                         CONFERENCE

1    is, Manatt served objections to our 30(b)(6) request, and they

2    also served objections to our RFA request.  And in every single

3    case they put the same identical boilerplate paragraph

4    objecting to give us any information.  So we would serve an

5    RFA, "admit that you have not sold books," and their objection

6    would be, they don't have sufficient information to admit or

7    deny.

8            Now, part of me would just like to move for summary

9    judgment immediately on this, but I don't know if that will win

10   the day at the end of the day.  So I'm not quite sure what to

11   do about this.  Perhaps the most logical thing to do, though --

12   it seems not fair and an unnecessary expense for Apple to have

13   to give them a do-over on these objections, but I do think they

14   were improper, and either they should do them over or we would

15   like some motion practice with regard to them.

16           THE COURT:  OK, we will all strive mightily to avoid

17   motion practice.

18           So why don't we use the May 4th date, where the

19   document production is being perfected, to also allow any

20   amended objections or discovery responses generally.  So you

21   will be in a better position a week from today, Ms. Cendali, to

22   know whether or not the objections to the requests you have

23   made merit further discussion with the Court.

24           MS. CENDALI:  I think, your Honor, that that's our

25   list of our productive meeting.  Plaintiff may have others but

1    that's where we are.  We realize going forward that everyone

2    has reserved rights to -- new issues we fully expect will come

3    up, and everyone has reserved all rights to meet and confer on

4    those issues.

5          THE COURT:  Let me talk a little bit about my

6    procedures.

7          If you have a discovery dispute, you have to meet and

8    confer and try to resolve it in good faith.  If you still have

9    a dispute, write me a letter no longer than -- my letters are

10   even shorter than Judge Forrest's -- two pages, but in that

11   letter make sure that you indicate that you have met and

12   conferred and been unable to resolve the issue.  And then I'll

13   get you on the phone or, if it seems a terribly complex issue,

14   we will meet in court and try to resolve it and I will give you

15   a ruling.  I may not wait for a response letter; I may just get

16   you on the phone.

17         I'm going to adopt the proposed schedule.  I'm not

18   going to schedule a pretrial order.  But if the parties do not

19   end up filing summary judgment motions, I want letters on

20   November 23rd indicating that there will be no summary judgment

21   practice, in which case I'll get out a separate scheduling

22   order for a pretrial order.

23         I'm going to act from this point on as if the

24   plaintiff is bound by all actions taken by his current counsel.

25   Should he change counsel yet again, we're not going to allow

C4rkjtcc                          CONFERENCE

1    another round of amended pleadings or revised discovery

2    requests or anything else.

3          We need an end date with respect to the amendment of

4    pleadings.  And why don't I give plaintiff's counsel an

5    additional week beyond May 4th, so May 11th, for the filing of

6    any amended pleading.

7          I take it nobody needs to join any additional party,

8    but that May 11th date is going to be for amendment and

9    joinder, so that we know as of that date the pleadings are

10   closed.

11         I think this is a case in which probably it makes

12   sense to have expert discovery before summary judgment

13   practice, but I just want to flag that as an issue.  If

14   counsel, after they proceed further in this case, think that it

15   would be more efficient and cost effective to have a summary

16   judgment motion before expert discovery, that's fine with me.

17         Also, if there's an immediate summary judgment that

18   can be filed on a discrete issue that a party thinks that I can

19   grant even now, today, before discovery, fact discovery, is

20   completed, I'd be open to that, if there's something that would

21   help the parties understand the law that will be applied here

22   and the likelihood of success, even if it doesn't fully resolve

23   the case.

24         Mr. Chattoraj, are there any additional issues that

25   you would like to raise at today's conference?

C4rkjtcc                        CONFERENCE

1          MR. CHATTORAJ:  Yes, your Honor.  Just a few

2     housekeeping issues, if I may.

3          I know that your Honor's individual practices require

4     that the parties provide a courtesy copy set of the pleadings

5     in advance of the conference.  Although this is not a

6     preliminary conference, it is our first conference before you,

7     and I have brought a courtesy copy set since we were just came

8     in yesterday.

9          THE COURT:  Thank you.  You may hand it up.

10          MR. CHATTORAJ:  I will just show my adversary.

11          MS. CENDALI:  I'm convinced that is what it is.  Thank

12     you, Mr. Chattoraj.

13          MR. CHATTORAJ:  The only change is the stamp that says

14     "Courtesy Copy" on the upper right-hand corner of both

15     documents.  There are a lot of exhibits, so it might be

16     helpful.

17          Another issue is the question of the substitution of

18     counsel.  As you correctly pointed out, your Honor, there is

19     currently before the Court a motion by Manatt Phelps to

20     withdraw.  It is the position of Manatt Phelps, as I understand

21     it, that it is a moot motion because of our appearing in the

22     case.  And as I mentioned at the outset of today's conference,

23     we are prepared to enter into stipulation with opposing counsel

24     substituting us, which we could then hand up right now.  I even

25     have the originals for your Honor's endorsement, and was

C4rkjtcc                          CONFERENCE

1   wondering if that is something that we should do today.

2          MS. CENDALI:  Your Honor, we have consented to the

3   substitution.  People are allowed to pick their attorneys of

4   choice.  I have to say, before everything happened yesterday,

5   our initial thought for this conference was to come here

6   requesting sanctions because it's been a sorry, tedious state

7   the past four months, where my client has had the unnecessary

8   expense of depositions confirmed, depositions canceled, the

9   panoply of different events.

10          It does seem bothersome to me, as an officer of the

11   court, that when Judge Forrest was clear that Manatt still had

12   a responsibility and had to move forward with the case, that it

13   chose not to, and it doesn't seem right that they effectively

14   took for themselves the stay that they had put in their motion

15   papers.

16          That being said, I'm certainly powerless to do

17   anything about it.  Whether some form of sanction might be

18   appropriate, I certainly could believe that's the case, but I

19   understand that it's a difficult situation and sanctions are

20   not issued lightly.

21          THE COURT:  Well, let me just say that I will accept

22   the appearance of incoming counsel for the plaintiff.  I don't

23   consider the motion by Manatt moot.  Instead, I'm going to

24   grant the motion and grant their request to withdraw on the

25   case.

C4rkjtcc                      CONFERENCE

1          And the history of the failures with respect to the

2     plaintiff pursuing discovery diligently, having filed the case

3     and imposing burdens on defense counsel through his failure to

4     act as you would want a plaintiff to act, to prosecute his own

5     claims diligently, it's part of the history in this case.  I'm

6     not going to ask for a sanctions motion now.  You have the

7     rights to file whatever you want to file, but I think the

8     appropriate way, from my point of view, to address this is to

9     just recognize it's the history in the case, to have every hope

10    and confidence that none of that will be repeated, and that we

11    move forward here towards the merits.  But if something happens

12    again and the issue appears in front of us and looms large and

13    defense counsel want to bring a motion, they can draw on that

14    whole history.

15         Mr. Chattoraj, I don't know if I finished asking you

16    if you had any other issues.

17         MR. CHATTORAJ:  I did have a couple of small issues.

18    For purposes of the record, let me be clear:  I'm not sure of

19    what communications took place before we appeared in this

20    matter, but we have not ruled out using a survey expert.  When

21    I referred earlier to a marketing and consumer psychology

22    expert, it was within my contemplation that a survey might be

23    done.  All I can say is, at this juncture I'm not sure whether

24    we'll do a survey or not, but I wouldn't want to mislead either

25    Ms. Cendali or the Court into thinking that we're not doing a

C4rkjtcc                     CONFERENCE

1    survey as part of the expert process.  It's just not clear

2    right now.

3          Also --

4          THE COURT:  Can I interrupt?

5          MR. CHATTORAJ:  Yes, you may.

6          THE COURT:  We have sophisticated counsel on both

7    sides.  I know you are proposing a date, and I will get out a

8    scheduling order of the filing of expert motions

9    September 15th.  I expect it will be helpful to both sides to

10   work on interim scheduling dates with respect to expert

11   discovery where you do more firmly advise each other of the

12   areas and perhaps the identity of experts.  And I'm going to

13   leave that for you to discuss among yourselves.

14         MR. CHATTORAJ:  Thank you, your Honor.  That makes a

15   lot of sense to us.

16         Just on some specific discovery issues:  I will say --

17   I have to say this because I'm very proud of myself -- in the

18   last 24 hours I basically reviewed the entirety of Apple's

19   production to date.  It was about 15,000 pages.  Without going

20   into detail, because I know that a substantive argument isn't

21   welcome at this time and not appropriate, I did discern

22   numerous deficiencies specifically with respect to certain

23   information that we feel we are entitled to.  During the

24   meet-and-confer we just had, I raised some of these issues and

25   indicated we hoped to meet and confer on these issues; and if

C4rkjtcc                    CONFERENCE

1   that failed, we would have to have motion practice.

2           I was informed some of the issues may have already

3   been resolved in the past.  So what I need to do is go back and

4   look at the conferences that took place before Judge Batts and

5   then before Judge Forrest and then see, but certainly our view

6   is that there is a substantial amount of material that needs to

7   be produced for the parties even to have an idea of where they

8   stand for purposes of resolution of the case, much less

9   actually trying the case in a few months.

10          So I just wanted to prepare the Court for a very

11  different tenor of the nature of discovery in this case.  We

12  certainly do intend to honor all of our discovery obligations

13  and the dates set forth by the Court, but we also intend to

14  redress what we see as pretty substantial deficiencies that

15  really no one has brought to the Court's attention until now,

16  in written form at least.

17          THE COURT:  Well, the great unknown in this case is

18  not whether Apple has an electronic books app, the great

19  unknown in this case is, what does the plaintiff have and what

20  are his rights based on that?

21          And to the extent you're alluding to discovery of

22  Apple with respect to profits and sales, you're going to have

23  to figure out a way to do that that is not burdensome, narrowly

24  focused, and does not become a significant imposition with

25  respect to the discovery, the nature of discovery in this case.

1          MR. CHATTORAJ:  Your Honor, I promise you that the way

2     I practice law is that I don't do discovery to cause pain --

3     we're just going to look for the truth -- and I completely

4     accept that, your Honor.

5          THE COURT:  OK.

6          MR. CHATTORAJ:  What I would say is that there is --

7     and I accept your Honor's view based on what's been presented

8     in the past in this case, that the big issue is what my clients

9     have.  We're very confident in that.  We do think that

10    discovery, an additional discovery, needs to be done on the

11    question of what Apple has.  And we think that we will be able

12    to present, based on discovery I have already seen and our

13    continued investigation, that Apple's own rights to the alleged

14    mark are quite infirm.  But that I understand is also for

15    another time.

16          What I'd also like to bring to the Court's attention

17    is that we have received a ruling in which my client has,

18    notwithstanding the page 36 of the transcript where Judge

19    Forrest said that Apple would bear the burden, is going to be

20    paying his adversary to do the processing of this hard drive,

21    and in the context of sanction and so on, I think -- I've

22    already expressed my view, perhaps improvidently, but that was

23    a strategic misstep by my predecessor.  In any event, I'd just

24    like that to be taken into account.  They are paying $19,000

25    they certainly didn't expect to have to pay when they made the

C4rkjtcc                          CONFERENCE

1    choice to do what they did.

2            THE COURT:  That is actually a very remarkably low

3    number, in my mind.  He filed the suit or the corporations

4    filed the suit.  It's expensive to engage in discovery.  They

5    made a choice.

6            MR. CHATTORAJ:  Yes, your Honor.  And, in fact, let me

7    make it clear, I am not in any way questioning the equities at

8    all.  The reality is, as I said before, what I would want to do

9    is take the hard drive back and perhaps spend more money doing

10   the processing.  I just want to make it clear, because it's not

11   clear from the record in the transcript, we have engaged an

12   ediscovery vendor -- it's been the last two to three days -- we

13   have already uploaded all of the materials produced by all the

14   parties.  And so the point is we're doing this right now.

15   Under the ESI requirements of the Federal Rules, under the

16   Sedona Conference gold standard, things are going to change.

17   We're doing this right.

18           THE COURT:  Good.

19           MR. CHATTORAJ:  And I just want to make it clear,

20   we're going to spend the money that's necessary to do this

21   right.

22           THE COURT:  Thank you, Mr. Chattoraj.

23           MR. CHATTORAJ:  My colleague wishes to address the

24   Court.  I'm going to sit down --

25           THE COURT:  OK.

C4rkjtcc                    CONFERENCE

1           MR. RASKOPF:  -- unless that's not acceptable to your

2    Honor, in which case I'll just whisper --

3           THE COURT:  No, no.  Mr. Raskopf, I'm afraid I have

4    other matters waiting in chambers, so I'm happy to hear from

5    you on anything that you think is important for me to hear.

6           MR. RASKOPF:  One minute?

7           THE COURT:  Sure.

8           (Pause)

9           MR. RASKOPF:  When your Honor said no revised

10   discovery requests, you said you weren't going to entertain any

11   more discovery, I guess, this is an issue, it may be an

12   issue -- I just want to tee it up for your Honor, that it's a

13   possibility that we will be coming back, because perhaps the

14   way we framed discovery did not call for Apple to inform us of

15   the revenues derived from the download of iBooks through the

16   iBookstore and the iBook application.  Obviously, as your Honor

17   knows, one of the remedies, in a damages case brought in a

18   matter like this, is disgorgement of the profits of the

19   defendant.

20          So we were told that we are not going to get that

21   information.  And I know your Honor doesn't want to see seven

22   different maybe ways that we could look at what the value of

23   this case is, but we really want to try to settle it -- I'm

24   here to get rid of this if I can -- but I know I'm not going to

25   be able to do that if I'm not going to have access to the kinds

C4rkjtcc                         CONFERENCE

1   of information that is, I think, just basic to a disgorgement

2   of profits analysis.

3           So just I'm just bringing this to your Honor's

4   attention.

5           THE COURT:  I think the idea that this case could be

6   settled based on some understanding of the net profits from the

7   Apple business, associated with the iBooks app, is a

8   fascinating one.  Again, I just want to say, I think the first

9   bit of information that has to be developed is the plaintiff's

10  rights and the nature and scope of the plaintiff's business.

11          MR. RASKOPF:  Your Honor is going to see, I represent,

12  that this is a legitimate business, and has been for a long

13  time, and it's a real business.  So this is not any -- it's a

14  pretty classic reverse confusion case.  It hasn't been -- the

15  documents haven't been assembled very well, but it's a case

16  that is capable of being well assembled, and we plan to do

17  that.

18          So I'm not trying to suggest, oh, you know, just turn

19  something over to me and then I'll make -- I'll try to get

20  something worked out with you, without you understanding what

21  my client's business is about.

22          THE COURT:  Good.  So, Mr. Raskopf, thank you for

23  bringing to my attention the need to address the issue of

24  settlement.  I assume we need to see what's on the hard drive.

25  I think we need to see, probably need a visual inspection of

C4rkjtcc                      CONFERENCE

1    the quote-unquote warehouse, at a minimum, and this document

2    production on May 4th, and perhaps the plaintiff's deposition.

3    But at that point, I expect the parties would be in a position

4    to contemplate serious settlement discussions.

5           Do you agree, Mr. Raskopf?

6           MR. RASKOPF:  I don't -- I agree that that is a

7    definite step toward the settlement resolution.  Now, if we're

8    told, after our documents and testimony is shown to Apple, they

9    still want to take this position that he is illegitimate, he's

10   looking for a windfall or something like that, then obviously

11   we're not going to settle it, because we believe that he is.

12   But having said that, the other component of that is that we

13   need to have some basic understanding of the revenue stream

14   from the iBookstore, from books downloaded through the

15   iBookstore and we don't have it and we were told we are not

16   going to get it.

17          THE COURT:  Well, I'll let you meet and confer about

18   that.  And I am sure you'll read the February 27th transcript,

19   among other things, before that meet-and-confer process.

20          I'm going to issue a scheduling order that would have

21   you contact the magistrate judge for settlement discussions to

22   occur.  And the contact time in my order will read, "you must

23   contact the magistrate judge no later than June 29th."  There

24   will be an immediate order of reference, so you can contact the

25   magistrate judge earlier.

C4rkjtcc                        CONFERENCE

1              Ms. Cendali, briefly, is there anything further we

2       need to discuss from your point of view?

3              MS. CENDALI:  No, your Honor.  Thank you for your

4       time.

5              THE COURT:  And thank you very much, Mr. Raskopf, for

6       bringing that additional issue to my attention.

7              MR. RASKOPF:  Thanks.  And we want to work it out, but

8       we've got to just have some stuff, and we'll give them our

9       stuff.  That's what it's all about.  We should have done it a

10      long time ago, maybe both of us, and now we're going to resolve

11      it, if we can.

12             THE COURT:  Thank you very much.

13             MR. RASKOPF:  You're welcome.

14                                   * * *

15

16

17

18

19

20

21

22

23

24

25