**ABV**  Allegaert Berger & Vogel LLP                    ATTORNEYS

Writer's email: pchattoraj@abv.com

111 Broadway, 20th Floor
New York, New York 10006
212.571.0550
212.571.0555 Fax

1199 Route 22 East
Mountainside, New Jersey 07092
908.228.8500
908.228.8515 Fax

www.ABV.com

MEMO ENDORSED

July 27, 2012

**BY HAND**
Hon. Denise L. Cote
United States District Court Judge
500 Pearl Street
New York, New York 10007

8/1/2012

RE:   J.T. Colby & Co. et al. v. Apple Inc., No. 11-cv-4060 (DLC) (S.D.N.Y.)

Dear Judge Cote:

Pursuant to Local Civil Rule 37.2 and Section 2(C) of Your Honor's Individual Practices, I write on behalf of Plaintiffs in this action to request an informal conference to address certain disputes concerning Defendant's objections to Plaintiffs' document requests (attached as Exhibit A) and other written discovery (see July 10 and July 27 letters attached as Exhibit B). I hereby confirm that the parties met and conferred in person on Thursday, July 12, 2012, and by telephone on previous occasions, but, based on subsequent communications from that date through today, we were unable to resolve the following issues. Although some of these disputes were submitted to the judges previously assigned to this action, see, e.g., Order, Jan. 9, 2012 (Exhibit C), and Transcript, Feb. 27, 2012, at 22:13-24:6 (Exhibit D), the Court has not previously ruled upon these issues.

**Book and Device Sales Data**: This action arises from Plaintiffs' allegations that Defendant Apple Inc. ("Apple") has infringed Plaintiffs' "ibooks" and "ipicturebooks" trademarks. On grounds of relevance, Apple has refused to produce documents or provide interrogatory or admission responses relating to the sales of books sold through or in connection with the iBooks application ("app"), or any documents relating to the sales of Apple devices on which the iBooks app can be installed and used to read electronic books (the "Apple Devices"). Apple's position is particularly problematic because Apple has publicly stated that the iBooks app "includes" the sale of electronic books, and that the Apple Devices' ability to run the iBooks app is a significant selling point.[1] Moreover, both public documents and internal Apple communications show that many consumers –even Apple employees like the late Steve Jobs – understand "iBooks" to mean "books available for sale through the iBooks app." Legally, these objections are unfounded because, among other reasons, books sold through the iBooks app are related goods for trademark-infringement purposes,[2] and Apple derived revenues from the sales of those books, in connection with the iBooks mark, which Plaintiffs may require Apple to disgorge.[3] Similarly, to the extent that the sales of the Apple Devices are attributable to their ability to support the iBooks app (to be demonstrated by Plaintiffs' experts through market analysis), Apple's income from sales of the Apple Devices is attributable to Apple's infringement of Plaintiffs' iBooks trademark for damages purposes.

---

[1] See, e.g., Press Release, Apple, Inc., *iPad available in US April 3* (March 5, 2010) (Bates Nos. APPLE-IBOOKS0027430-31) ("The new iBooks app for iPad includes Apple's new iBookstore, the best way to browse, buy and read books on a mobile product.") (attached hereto as Exhibit E).
[2] See, e.g., New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 336 (S.D.N.Y. 2010) ("To be 'related' for the purposes of trademark law, conflicting goods or services do not have to be in direct competition with one another. Rather, the relevant question is whether they are so 'related' that a reasonable buyer is likely to think that a defendant's goods or services are somehow connected with or sponsored by the plaintiff, due to similar marks." (internal citations omitted)).
[3] Defendant's profits are a statutory remedy to which plaintiffs are generally entitled, especially here, where Plaintiffs have pled willfulness and bad faith. See 15 U.S.C. § 1117(a) (plaintiffs are entitled to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."). In addition, "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only . . . ." Id. Accordingly, the discovery sought is directly relevant to this action.


Allegaert Berger & Vogel LLP

Hon. Denise L. Cote
July 27, 2012
Page 2

**Redactions for Relevance:** Apple has also redacted substantial sections of a large number of responsive documents on grounds of relevance, including but not limited to sales and revenue information. Such redaction is improper; a defendant is not permitted to base such redactions of non-privileged, responsive documents, based on unilateral determinations of relevance.[4] (Based on our discussions, Defendant does not contest that, because of the protective order in this action, confidentiality considerations do not justify these redactions.)

**The "i"-Family of Marks:** Apple has refused to produce any documents or provide information relating to settlements, licensing agreements, and other agreements concerning other trademarks in Apple's famous "i"-family of marks on grounds of relevance. Because Apple's own admissions make clear that the value of the iBooks mark to Apple derives in part from its membership in that family of marks, we are advised that such information would permit Plaintiffs' consulting damages experts to calculate the value of the iBooks mark to Apple using analysis of "comparables." In addition, given Apple's extensive history of willful infringement of other companies' existing marks (so massively as to render its infringement a fait accompli) and then settling disputes, these requests are reasonably calculated to lead to the discovery of relevant admissible evidence concerning, among other things, a "reasonable royalty," "implied license," or disgorgement theory of damages.

**Patents:** Apple has refused to produce any documents concerning patents underlying the iBooks App on grounds of relevance. These requests are reasonably calculated to lead to the discovery of relevant admissible evidence because, among other reasons, certain of the patents and patent filings of Family Systems Ltd., the company from which Apple purportedly purchased the "iBook" trademark, demonstrate that the business in which Family Systems engaged was completely different from Apple's iBooks App, rendering the alleged purchase an invalid "assignment in gross" under controlling trademark law. Admissions made in the requested patent documents would be similarly probative, for this purpose, of the way in which the iBooks mark is actually being used by Apple. Although some patent documents are publicly available, Plaintiffs are unable to determine exactly which patents are practiced in the iBooks App technology.[5]

Respectfully submitted,

Partha P. Chattoraj

Attachments (5)

cc: All counsel of record (by hand and email, with attachments)

*[Handwritten note:] The request for a conference is denied. The plaintiff's requests for this information are denied.*
*Denise Cote*
*Aug. 1, 2012*

---

[4] Numerous courts have held that such redactions on relevance grounds are improper. See, e.g., A.I.A. Holdings S.A. v. Lehman Bros., No. 97 Civ. 4978, 2000 WL 763848, at *3 (S.D.N.Y. June 12, 2000); Amoco Corp. v. Exxon Chem. Corp., Civ. A. No. C87-242A, 1987 WL 60204, at *3 (N.D. Ga. Sept. 17, 1987) ("defendant should not be allowed to determine ab initio the relevance of parts of the documents it produces"); Sellon v. Smith, 112 F.R.D. 9, 13 (D. Del. 1986) (defendant "should not be the final arbiter of what is relevant or irrelevant in a particular document"). This is partly because relevance is such a broad concept at the discovery stage. See Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269, 274 (S.D.N.Y. 1999) ("It is well-settled within this Circuit that any possibility that the sought-after information may be relevant to the subject matter of the action will satisfy Rule 26(b)(1)'s requirements.") (internal citations omitted).

[5] During the meet and confer process, Plaintiffs narrowed their document requests for patent documents, and agreed to forgo production of documents concerning "e-commerce" patents, and to seek production only of documents concerning patents that allow consumers to utilize and read books through the iBooks App.