UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| J.T. COLBY & COMPANY, INC. d/b/a/ BRICKTOWER PRESS, J. BOYLSTON & COMPANY, PUBLISHERS LLC and IPICTUREBOOKS LLC, <br><br> Plaintiffs, <br><br> -against- <br><br> APPLE INC., <br><br> Defendant. | Case No.  11 Civ. 4060 (DLC) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY, INCLUDING AFFIDAVITS, DECLARATIONS, AND REPORTS, OF DEFENDANT'S EXPERT WITNESS GREGORY S. CARPENTER**

ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, NY 10006
(212) 571-0550

# TABLE OF CONTENTS

**Page**

ARGUMENT ............................................................................................................2

I.  UNDER BOTH THE LAW AND THE FACTS, MR. CARPENTER IS NOT
    QUALIFIED TO OPINE ABOUT MARKETING IN THE BOOK
    PUBLISHING INDUSTRY ............................................................................2

    A.    Courts Recognize That General Experience Alone, Without a Nexus, Does
          Not Qualify an Expert to Provide Opinions Regarding a Specific Field .................3

    B.    Mr. Carpenter's General Experience Alone Does Not Render Him
          Qualified ...........................................................................................................6

II.  MR. CARPENTER IS NOT QUALIFIED TO OPINE ON LEGAL CONCEPTS ...........8

    A.    Mr. Carpenter Does Not Have Any Experience Allowing Him to Rebut
          Mr. Scherer ..........................................................................................................8

    B.    Mr. Carpenter's Opinions on Lack of Consumer Recognition Are
          Improper ...............................................................................................................9

    C.    Mr. Carpenter's Opinions on Likelihood of Confusion Are Improper .................10

CONCLUSION .....................................................................................................10

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*Bright v. Ohio Nat. Life Assur. Corp.*,
  2013 WL 121479 (N.D. Okla. Jan. 9, 2013)........................................................4

*City of Hobbs v. Hartford Fire Ins. Co.*,
  162 F.3d 576 (10th Cir. 1998) ...........................................................................3

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)........................................................................................7, 8

*Highland Capital Mgmt., L.P. v. Schneider*,
  379 F. Supp. 2d 461 (S.D.N.Y. 2005).................................................................8

*Klaczak v. Consol. Med. Trans.*,
  458 F. Supp. 2d 622 (N.D. Ill. 2006) ..................................................................8

*Lappe v. Am. Honda Motor Co.*,
  857 F. Supp. 222 (N.D.N.Y. 1994).....................................................................4

*PAJ, Inc. v. Barons Gold Mfg. Corp.*,
  2002 WL 1792069 (S.D.N.Y. Aug. 2, 2002).......................................................9

*Price v. Fox Entm't Group*,
  499 F. Supp. 2d 382 (S.D.N.Y. 2007).................................................................9

*R.F.M.A.S., Inc. v. So*,
  748 F. Supp. 2d 244 (S.D.N.Y. 2010).................................................................7

*Ralston v. Smith & Nephew Richards, Inc.*,
  275 F.3d 965 (10th Cir. 2001) ...........................................................................9

*Rich & Rich P'ship v. Poetman Records USA, Inc.*,
  2010 WL 1978804 (E.D. Ky. May 17, 2010) ......................................................5

*Stagl v. Delta Air Lines, Inc.*,
  117 F.3d 76 (2d Cir. 1997)..........................................................................4, 5, 6

*TC Sys., Inc. v. Town of Colonie, N.Y.*,
  213 F. Supp. 2d 171 (N.D.N.Y. 2002)................................................................5

*Trustees of Univ. of Penn. v. Lexington Ins. Co.*,
  815 F.2d 890 (3d Cir. 1987)...............................................................................4

*U.S. v. Prouse*,
  945 F.2d 1017 (8th Cir. 1991) ............................................................................4

**<u>Statutes</u>**

Fed. R. Evid. 403 ..........................................................................................................................2

Fed. R. Evid. 702 ..........................................................................................................................2

**<u>Miscellaneous</u>**

J. Thomas McCarthy,
 *Trademarks & Unfair Competition* ...............................................................................9

## PRELIMINARY STATEMENT

Apple's Opposition to Plaintiffs' Motion to Exclude Gregory S. Carpenter ("Opposition or "Opp.") does not even acknowledge, let alone rebut, the primary justification for excluding his testimony: ***Mr. Carpenter has no experience in the book-publishing industry <u>and</u> he made no effort to educate himself about marketing in the book-publishing industry.***[1]  As Mr. Carpenter himself opined, in order to apply "general," high-level marketing principles, one must have knowledge of the industry to which these principles are being applied.[2]  Under his own standard, Mr. Carpenter fails.  Because he has neither ***experience in*** nor ***knowledge about*** the book-publishing industry, his opinions on marketing principles as applied to book publishing are supported by nothing but his own *ipse dixit*.

Apple attempts to obscure this fatal defect by detailing (at absurd length) Mr. Carpenter's general background as a marketing professor.  But as case law—including cases cited by Apple—demonstrates, general experience ***alone*** cannot qualify an expert to opine on practices in specific fields; rather, that expert ***also*** must take steps to educate himself or herself about the specific field to assure the Court that his or her proffered testimony is reliable.  Here, Mr. Carpenter seeks to opine that his "general principles" apply to the book-publishing industry, but because he took no steps to educate himself about book publishing, his opinions have no reliability based on his "knowledge, skill, experience, training, or education," and the

---

[1]  Plaintiffs respectfully direct the Court to their Memorandum of Law In Support of Plaintiffs' Motion to Exclude the Testimony, Including Affidavits, Declarations, and Reports, of Defendant's Expert Witness Gregory S. Carpenter ("Motion" or "Mot.") for all terms defined therein.  Unless otherwise noted, all citations to Mr. Carpenter's Reports and deposition transcript can be found at Exhibits A-C to the Bogdanos Declaration in support of this Motion.  All other citations to expert reports and deposition transcripts are attached as exhibits to the Declaration of Todd Anten ("Anten Decl.") in support of this Motion, dated February 5, 2012.

[2]  Mr. Carpenter testified, for example, that "particular [marketing] strategies that are effective vary from context to context," and that  "[w]hat works in automobiles is different than what might work for some brands, in coffee, for example.  So you need to understand those differences, the meaningful dimensions of those differences to make recommendations about what works and what wouldn't work."  (Carpenter Tr. 7:23-8:12.)  Bizarrely, Apple does not even acknowledge this testimony from its own expert, let alone explain why it should be disregarded.

introduction of his opinions would only confuse the jury and prejudice Plaintiffs.  *See* Fed. R. Evid. 702, 403.

Even more egregious is Apple's attempt to convince the Court that Mr. Carpenter, a marketing professor, is somehow qualified to offer purported expert opinions on ***legal topics*** such as (1) whether a trademark assignment is valid and whether it included a transfer of goodwill; (2) whether Plaintiffs' IBOOKS mark reached the requisite level of secondary meaning among its customers to constitute a protectable and enforceable trademark; and (3) whether Apple's use of the IBOOKS mark causes a likelihood of confusion as that term is understood in trademark law.  Mr. Carpenter, however, ***does not even understand what these concepts are***.  He has no legal training and, among other glaring gaps in his knowledge, does not even appear to understand what it means to cause "confusion by affiliation" (the alleged form of confusion at issue in this case).  In short, Mr. Carpenter's opinions on these topics would be of no more help to the factfinder than would the opinions of a layperson, and therefore must be excluded.

## ARGUMENT

### I.   UNDER BOTH THE LAW AND THE FACTS, MR. CARPENTER IS NOT QUALIFIED TO OPINE ABOUT MARKETING IN THE BOOK PUBLISHING INDUSTRY

In their Motion, Plaintiffs explained that, while Mr. Carpenter may be a professor of marketing, he is ***not*** an expert in book publishing, nor does he have even a basic understanding of the book-publishing industry.  As such, he is not qualified to opine on the adequacy of Plaintiffs' marketing strategies or practices.  In its opposition, Apple twists Plaintiffs' position to be that someone with general marketing experience can never provide expert testimony, and that Mr. Carpenter must have personally worked in the book-publishing industry for his testimony to be admissible.  Neither of these forms the basis of Plaintiffs' Motion.

Plaintiffs' point is a simple one: Mr. Carpenter has no book-publishing industry experience **and** did nothing to educate himself about the industry before preparing his Reports. It is his failure to educate himself about marketing in the book-publishing industry that renders his testimony unqualified and inadmissible.  This is true not only under the law, but also in **Mr. Carpenter's own opinion**—he testified that marketing is sector- and company-specific, and in order to evaluate sufficiently a company's marketing strategies, the evaluator must be "aware of the context and understand some of the tickers."  (Carpenter Tr. 7:5-6, 8:4-12.)  While Mr. Carpenter provided a lengthy list of materials he reviewed in constructing his Reports, none of these materials has anything to do with marketing practices in the book-publishing industry.[3]

### A.    Courts Recognize That General Experience Alone, Without a Nexus, Does Not Qualify an Expert to Provide Opinions Regarding a Specific Field

As an initial matter, Apple does not pretend that Mr. Carpenter has any marketing experience in the book-publishing industry; rather, Apple simply claims that "there is no requirement" that he have such experience.  (Opp. at 6.)  While experts with general experience may be permitted to testify about specific topics about which they do not have experience, such experts must establish that they have taken steps to educate themselves about the specific topic at issue, thereby providing a nexus between their general experience and the specific field.

**First**, courts routinely exclude proffered experts who have knowledge in a general field but do not have specific knowledge relevant to the case.  "***Though a proffered expert possesses knowledge as to a general field, the expert who lacks specific knowledge does not necessarily assist the jury***."  *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 587 (10th Cir. 1998) (emphasis added) (citation omitted).  For example, courts have excluded experts who had general

---

[3]  In contrast, Plaintiffs' expert Dr. Susan Schwartz McDonald offers marketing insight into ***consumer perceptions***—not internal business practices within a specialized industry.

knowledge about insurance disputes, but not specific knowledge about particular kinds of insurance disputes.  *See*, *e.g.*, *id.*; *Bright v. Ohio Nat. Life Assur. Corp.*, 2013 WL 121479, at *2 (N.D. Okla. Jan. 9, 2013) ("Generalized knowledge of insurance disputes does not cure the lack of specialized knowledge of [Oklahoma] bad faith cases.") (quotation marks omitted); *see also, e.g.*, *U.S. v. Prouse*, 945 F.2d 1017, 1025-26 (8th Cir. 1991) (affirming exclusion of chemist who only had experience with simple sobriety tests from testifying as to specific effects of alcohol); *Trustees of Univ. of Penn. v. Lexington Ins. Co.*, 815 F.2d 890, 903 (3d Cir. 1987) (affirming exclusion of expert who had years of experience as a claims adjuster but no experience with claims of magnitude at issue).  Indeed, the Second Circuit has confirmed that courts have the discretion to exclude such experts where "other experts exist who are more specifically qualified."  *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997).

     ***Second***, in determining whether an expert with general knowledge can extend his opinions to a specific field, courts require some showing of specific knowledge ***in addition*** to that general knowledge—for example, experience that is analogous or similar to the specific field at issue, or efforts by the expert to educate himself about the specific field.  In fact, the cases cited by Apple confirm that, if an expert with general knowledge or experience in a field wishes to provide expert testimony, there ***also*** must be some nexus to bridge the expert's general experience to the specific field in question.  In *Lappe v. Am. Honda Motor Co.*, 857 F. Supp. 222 (N.D.N.Y. 1994), for example, the court found that "[w]here an expert has the education or background to permit him to analyze a given set of circumstances, he can ***through reading, calculations and reasoning … make himself very much an expert in the particular product*** even though he has not had actual experience in its manufacture."  *Id.* at 226-27 (quotation marks and citations omitted) (emphasis added).  Here, while Mr. Carpenter recognized the need to

become an expert in the "product" (here, the book-publishing industry) to opine on marketing issues related thereto, he failed to educate himself about the industry so that he could "make himself" an expert in it.  Instead, he did nothing.[4]

To this end, Apple deeply misconstrues *Stagl v. Delta Air Lines, Inc*.  In *Stagl*, a personal injury case relating to unsafe airport baggage systems mechanisms, the Court began by stating:

> [O]ne of the factors that the district court ought to consider is whether other experts exist who are more specifically qualified and who are nonetheless not in the employ of the company or industry whose practices are being challenged.  If the only experts permitted to testify inevitably represent the same side of a civil case, those who possess these experts can, for all practical purposes, set their own standards.

117 F.3d at 81.  After considering the plaintiff's expert, the Court found that "[i]t is hard to imagine an expert in airport terminal design or baggage claim systems who developed that expertise in any way other than by working for the airline industry."  *Id.* at 82.  Thus, according to the Court, it was unfair to require that an expert work directly in the field in question, because such a requirement would render all qualified experts biased.

*Stagl*, however, strongly **supports** Mr. Carpenter's exclusion.  First, the proffered expert in *Stagl* also had a nexus beyond his general experience—he was not just a mechanical engineer, but the relevant "interaction between people and machinery is clearly **of the sort** that [he] has worked with in depth."  *Id.* (emphasis added).  Mr. Carpenter does not claim to have experience with fields that are "of the sort" of the book-industry—his marketing experience lies in motorcycles, cruises, and Coca-Cola.  Second, unlike the expert in *Stagl*, Mr. Carpenter could

---

[4]  The same is true in the other cases cited by Apple.  In *Rich & Rich P'ship v. Poetman Records USA, Inc.*, 2010 WL 1978804 (E.D. Ky. May 17, 2010), for example, although the challenged expert did not have marketing experience in the specific field of marketing audio CDs sold in Kentucky, the court found she had experience in the marketing of **similar** products sold in Kentucky, and so "ha[d] experience marketing to the demographics that would be targeted for Rich & Rich's album."  *Id.* at *2.  Carpenter, however, has made no similar claim.  And in *TC Sys., Inc. v. Town of Colonie, N.Y.*, 213 F. Supp. 2d 171, 175 (N.D.N.Y. 2002), the expert did not opine on specifics of the case, but on "broad economic principles and market forces."  Here, Mr. Carpenter is not merely offering general testimony on "broad [marketing] principles," but rather seeks to opine specifically on the book-publishing industry.

have educated himself about the book-publishing industry by conducting interviews with people in that industry or researching marketing practices in book publishing.  ***He simply chose not to.*** He therefore has no idea if his general principles or other experiences have any applicability to book publishing.  Finally, Apple does not contest that "other experts exist" who may opine on marketing practices in the book-publishing industry.  *Stagl* is therefore inapplicable.

### B.    Mr. Carpenter's General Experience Alone Does Not Render Him Qualified

Apple spills much ink touting Mr. Carpenter's status as a marketing professor, detailing his educational history, research, and scholarship, in order to distract the Court from a crucial, dispositive fact: nothing in Mr. Carpenter's background bears on the book-publishing industry. Likewise, Mr. Carpenter never bothered to take any steps to educate himself about marketing practices in the book-publishing industry—he failed to remedy his lack of industry-specific experience so that he could apply his general knowledge to the facts of this case.  He has no nexus to book publishing at all, be it through experience or education.

Apple's claim that Mr. Carpenter's general marketing knowledge is sufficient to opine on the idiosyncratic world of book-publishing marketing is not only contrary to the law (as discussed *supra* Part I.A), but is also contrary to common sense.  In Apple's view, Mr. Carpenter is ***automatically*** qualified to provide expert testimony to a jury about anything related to "marketing" in any case in the country, no matter how nuanced, unique, or unfamiliar the field, and regardless of his failure to educate himself about the industry on which he is opining.  Such a wildly macro view of a field as broad and diverse as "marketing" cannot be accepted.

Attempting to cobble together some relevant experience to satisfy the requisite nexus, Apple claims that Mr. Carpenter has "provided executive seminars for people in magazine publishing and media and related business and many businesses that have characteristics

6

associated with book publishing." (Opp. at 10.)[5]  This vague assertion cannot form a foundation for sufficient expertise to testify about book-publishing.  ***First***, it is puzzling that Apple can represent that Mr. Carpenter has given seminars for "many businesses that have characteristics associated with publishing" when Mr. Carpenter never did any research to determine ***what those characteristics in book publishing are***.  In other words, how would he know?  Mr. Carpenter did no research on the book-publishing industry, so any attempt to compare his experiences to that field are based on nothing more than rank speculation and *ipse dixit*.[6]  ***Second***, simply because Mr. Carpenter ***gave*** a seminar to magazine publishers does not mean that he ***knows*** about anything about marketing as applied to magazine publishing.[7]

Mr. Carpenter's Report corroborates that the materials he referenced have no bearing on book publishing.  His "Materials Reviewed" Appendix, for example, does not list any materials related to marketing in the book-publishing industry.  (Carpenter Rep., App'x B.)  While Apple claims that, in preparing his Report, Mr. Carpenter "investigated publishing industry statistics; studied Plaintiffs' website; reviewed *New York Times* bestseller lists … [and] reviewed publishing industry directories" (Opp. at 11.), none of these materials provide him with an understanding of how book publishers conduct their marketing activities.[8]  Because Mr.

---

[5]  Notably, neither Mr. Carpenter nor Apple mentioned these seminars until Mr. Carpenter's deposition, and to date ***still*** have not identified the magazine publishers or the subjects of the seminars.

[6]  To this end, whether Mr. Carpenter gave a seminar to ***magazine*** publishers cannot *per se* qualify his opinions on marketing practices in ***book*** publishing—he does not know whether marketing in these industries are similar.

[7]  Apple also failed to demonstrate that Mr. Carpenter's purported "seminars" even relate to marketing.  This is not an issue of credibility, but is rather an unmet burden; ***Apple bears the burden of proof, at the outset, of establishing that Carpenter is qualified***.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 n.10 (1993); *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 269 (S.D.N.Y. 2010) (expert's "conclusory statement is plainly inadequate to satisfy [movant's] burden of proving by a preponderance of the evidence that its experts are qualified to offer their proposed testimony").

[8]  The "publishing industry statistics" to which Apple refers is a webpage from "Dan Poynter's Parapublishing.com" and includes statistics such as "54% of small independent publishers are male."  (Carpenter Rep., Ex. 1 (Anten Decl., Ex. A) at 3.)  It is unclear what this page is, or how such statistics would help Mr. Carpenter understand marketing in the book-publishing industry.  Further, he does not list any materials about marketing practices in the
***(footnote continued)***

Carpenter's "competence in the general field [at issue] must extend to his specific testimony on the matter before the Court," and because Mr. Carpenter did not do the work to gain "sufficient specialized expertise to render his opinion on the topic … reliable, as required by *Daubert*," he must be excluded.  *Klaczak v. Consol. Med. Trans.*, 458 F. Supp. 2d 622, 665 (N.D. Ill. 2006) (quotation marks omitted).[9]

## II.    MR. CARPENTER IS NOT QUALIFIED TO OPINE ON LEGAL CONCEPTS

### A.    Mr. Carpenter Does Not Have Any Experience Allowing Him to Rebut Mr. Scherer

Apple's contention that Mr. Carpenter can "appl[y] his marketing expertise to assess whether Family Systems' goodwill (or brand equity) in its IBOOK mark was in fact transferred to Apple" (Opp. at 15) as a rebuttal to Mr. Scherer's opinions is untrue.  While the ultimate question of whether goodwill has transferred is for the Court to decide, Mr. Scherer, a former PTO examiner with over 30 years of legal and trademark experience, is well-situated to evaluate and explicate factual issues and standard practices which could help the Court reach such a determination. *See Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005).  Mr. Carpenter, however, is not so situated.  Mr. Carpenter's entire opinion in this regard is premised upon the unsupported contention that "brand equity" is the marketing corollary of the legal concept of goodwill.  (*See* Mot. at 11-12.)  However, as he recognizes, the

---

book-publishing industry.

[9] In an effort to bolster Mr. Carpenter's Reports despite his lack of qualifications, Apple claims that Plaintiffs' expert Mr. Shatzkin "offered nearly the same opinion as Dr. Carpenter."  (Opp.  at 12.)  This is bunk—Mr. Shatzkin strongly disputed Mr. Carpenter's opinions.  *First*, notwithstanding the misleadingly excerpted quotes from Mr. Shatzkin's deposition, Mr. Shatzkin could not have been clearer that, in his opinion, "publishers spend no money creating consumer awareness of brands."  (Deposition of Mike Shatzkin, December 4, 2012 (Anten Decl., Ex. B) at 193:17-194:3.)  As Mr. Shatzkin described, "It's not only a common thing that experts in other fields fail to understand publishing, the failures are generally of  a category which is they don't get the granularity of it.  That's exactly what Carpenter failed to get. … Anybody coming into publishing from the outside their jaw drops."  (*Id.* 220:18-221:23.)  To describe Mr. Carpenter as offering the "same opinion" as Mr. Shatzkin is ludicrous.  *Second*, it of course makes no difference whether the two came to the same conclusions—the issue here is whether Mr. Carpenter is qualified to opine at all.

*assignment* of goodwill is a legal concept, and Mr. Carpenter does not (and cannot, given his lack of legal training) explain why transferred brand equity should equate to transferred goodwill.[10]  By his own admission, Mr. Carpenter is not qualified to opine on such concepts; thus, this testimony must be excluded.[11]  *See, e.g.*, *Price v. Fox Entm't Group*, 499 F. Supp. 2d 382, 389 (S.D.N.Y. 2007) (excluding expert who opined on principles of copyright law, but admitted at deposition he did not understand the meaning of those principles); *see also Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001) (expert not qualified on a particular topic where expert admitted she lacked expertise on that subject).

### B.    Mr. Carpenter's Opinions on Lack of Consumer Recognition Are Improper

While the *existence* of secondary meaning is question of fact, secondary meaning itself is a legal concept.  *See PAJ, Inc. v. Barons Gold Mfg. Corp.*, 2002 WL 1792069, at *2 (S.D.N.Y. Aug. 2, 2002) (citing 2 J. Thomas McCarthy, *Trademarks & Unfair Competition* § 11:82).  In order to determine whether secondary meaning exists based on the facts at hand, one must first understand what secondary meaning *is*—and Mr. Carpenter does not have the specific background and training to understand.  (*See* Carpenter Tr. 98:14-99:9.)  Further, as discussed above (*see supra* Part I), Mr. Carpenter also does not understand how secondary meaning is developed within the book-publishing industry and thus cannot properly opine on factual issues such as how Plaintiffs' sales compare to the industry standard or the nature and impact of Plaintiffs' internal marketing practices.  Lacking the requisite bases, Mr. Carpenter is not qualified to give an ultimate opinion on whether secondary meaning exists in this case.

---

[10] The absurdity of this argument is underscored by Apple's contention that Mr. Carpenter's conclusions regarding goodwill are based on his marketing analysis of certain facts (including, *e.g.*, the assignment agreement between Apple and Family Systems).  In essence, Apple argues that Mr. Carpenter applied his "marketing expertise" to a legal contract between two parties in order to arrive at a marketing opinion as to a legal concept, with no explanation as to why a marketing professor's opinion of a legal document is at all helpful to the finder of fact.

[11] *See* Carpenter Tr. 98:14-99:9, 135:21-136:12.

C.      **Mr. Carpenter's Opinions on Likelihood of Confusion Are Improper**

Mr. Carpenter's opinions on likelihood of confusion likewise fall outside of the realm of his expertise.  As Apple admits, "likelihood of confusion is a legal question," and Apple has put Mr. Carpenter forward to testify about "marketing in the publishing industry as a factual matter." (Opp.  at 14.)  Mr. Carpenter's opinions on a legal concept are unlikely to help the factfinder when he does not even understand what "confusion by affiliation"—the type of confusion at issue in this case—is.  (*See* Carpenter Tr. 103:4-11, 103:21-104:3.)  Mr. Carpenter's opinions on the likelihood of confusion are no more helpful to a finder of fact than a layperson's would be, and thus should be excluded.  (*See* Mot. at 9-10.)

**CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' Motion in its entirety.

Dated: New York, New York
       February 5, 2013

                                        Respectfully submitted,

                                        ALLEGAERT BERGER & VOGEL LLP


                                        By:___/s/ Partha P. Chattoraj_____
*Of counsel:*                                  Partha P. Chattoraj
Robert L. Raskopf                              David A. Shaiman
Claudia T. Bogdanos                     111 Broadway, 20th Floor
QUINN EMANUEL URQUHART          New York, New York 10006
   & SULLIVAN, LLP                      (212) 571-0550
51 Madison Avenue, 22nd Floor
New York, New York, 10010               *Attorneys for Plaintiffs J.T. Colby & Co., Inc. d/b/a*
Telephone: (212) 849-7000               *Brick Tower Press, J. Boylston & Co., Publishers,*
Facsimile: (212) 849-7100               *LLC, and ipicturebooks, LLC*