Dale M. Cendali
Claudia Ray
Bonnie L. Jarrett
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022

Perry J. Viscounty
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025

Jennifer L. Barry
LATHAM & WATKINS LLP
600 West Broadway, Suite 1800
San Diego, CA 92101-3375

*Attorneys for Defendant*
APPLE INC.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

J.T. COLBY & COMPANY, INC. d/b/a BRICK
TOWER PRESS, J. BOYLSTON & COMPANY,
PUBLISHERS LLC and IPICTUREBOOKS LLC,

          Plaintiffs,

    - against -

APPLE INC.,

          Defendant.

---

Case No.  11-CIV-4060 (DLC)

ECF Case

**REDACTED**

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ................................................................................ ii

**PRELIMINARY STATEMENT** ..........................................................................1

**ARGUMENT** ......................................................................................................1

**I.    Plaintiffs Do Not Have Any Trademark Rights In "ibooks."** ...............1

    A.    It Is Undisputed That The Term "ibooks" Is Merely Descriptive. .........1

    B.    The Undisputed Facts Show "ibooks" Has No Secondary Meaning. ....................2

        1.    Plaintiffs Did Not Offer A Secondary Meaning Survey. ............................2

        2.    Plaintiffs' Undisputed Sales Do Not Support Secondary Meaning. ............3

        3.    The Advertising And Media Coverage For "ibooks" Is Undisputed. ..........3

        4.    It Is Undisputed That There Have Been No Attempts To Plagiarize Plaintiffs' Alleged Mark And That Their Use Has Not Been Exclusive. ...............4

**II.   Apple's Registered iBooks Trademark Has Priority** .............................5

    A.    The Assignment From Family Systems Is Valid. .................................5

    B.    Apple Did Not Commit Fraud on the PTO. .........................................6

**III.  There Is No Likelihood Of Confusion.** ...................................................7

    A.    Apple Did Not Saturate Plaintiffs' Market ..........................................8

    B.    Plaintiffs' Alleged "ibooks" Mark Is Weak. .......................................8

    C.    Plaintiffs' Alleged Mark And Apple's Mark Are Not Similar. .............8

    D.    The Products Are Not Proximate Because They Do Not Compete. .......9

    E.    There Is No Evidence Plaintiffs Intend To Bridge The Gap. ...............9

    F.    There Is No Evidence Of Actual Confusion. ........................................9

    G.    Apple Adopted Its iBooks Mark In Good Faith. ................................10

    H.    Apple's Quality Is High and Plaintiffs' Customers Are Sophisticated. ................10

**CONCLUSION** ...............................................................................................10

**TABLE OF AUTHORITIES**

Page

**Cases**

*Advance Magazine Publishers, Inc. v. Norris*,
627 F. Supp. 2d 103, 113 (S.D.N.Y. 2008).................................................................. 8

*Becoming, Inc. v. Avon Prods., Inc.*,
No. 01 Civ. 5863, 2001 WL 930794 ( S.D.N.Y. Aug. 15, 2001) .......................... 6

*Big Star Entm't, Inc. v. Next Big Star, Inc.*,
105 F. Supp. 2d 185 (S.D.N.Y. 2000)......................................................................... 10

*Black & Decker Corp. v. Dunsford*,
944 F. Supp. 220, 225 (S.D.N.Y. 1996).....................................................................2

*Boathouse Group, Inc. v. Tigerlogic Corp.*,
777 F. Supp. 2d 243 (D. Mass. 2011) ......................................................................... 6

*Brandwynne v. Combe Int'l, Ltd.*,
74 F. Supp. 2d 364 (S.D.N.Y. 1999)........................................................................... 3

*Brockmeyer v. Hearst Corp.*,
248 F. Supp. 2d 281 (S.D.N.Y. 2003)......................................................................... 8

*Brown v. Quiniou*,
744 F. Supp. 463 (S.D.N.Y. 1990).............................................................................. 9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................... 1

*Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*,
759 F.2d 1053 (2d Cir. 1985).................................................................................. 5, 6

*eMachines, Inc. v. Ready Access Memory, Inc.*,
No. EDCV 00-00374-VAPEEX, 2001 WL 456404 (C.D. Cal. Mar. 5, 2001),
2001 WL 456404 ........................................................................................................ 5

*Ergotron, Inc. v. Hergo Ergonomic Support Sys., Inc.*,
No. 94 Civ. 2732, 1996 WL 143903 (S.D.N.Y. Mar. 29, 1996) ............................... 3

*Gennodie v. Metro N. Commuter R.R.*,
No. 91 Civ. 8445 (DLC), 1995 WL 366442 (S.D.N.Y. June 20, 1995) ..................... 1

*Glamorene Prods. Corp. v. Procter & Gamble Co.*,
538 F.2d 894 (C.C.P.A. 1976) ................................................................................... 5

*Ideal World Mktg., Inc. v. Duracell, Inc.*,
   15 F. Supp. 2d 239 (E.D.N.Y. 1998) *aff'd,* 182 F.3d 900 (2d Cir. 1999)............................ 2, 3

*In re Bose Corp.*,
   580 F.3d 1240 (Fed. Cir. 2009)................................................................................. 6, 7

*Info. Superhighway, Inc. v. Talk Am., Inc.*,
   395 F. Supp. 2d 44 (S.D.N.Y. 2005).............................................................................. 10

*Jewish Sephardic Yellow Pages v. DAG Media, Inc.*,
   478 F. Supp. 2d 340 (E.D.N.Y. 2007) .......................................................................... 3, 4

*Kinbook, LLC v. Microsoft Corp.*,
   866 F. Supp. 2d 453, 466 (E.D. Pa. 2012) *aff'd,* 12-1488, 2013 WL 116516
   (3d Cir. Jan. 10, 2013) .............................................................................................. 8

*Lang v. Ret. Living Publ'g Co.*,
   949 F.2d 576 (2d Cir. 1991)........................................................................................ 8

*Levi Strauss & Co. v. Esprit US Distrib. Ltd.*,
   588 F. Supp. 2d 1076 (N.D. Cal. 2008) .......................................................................... 7

*Levitt Corp. v. Levitt*,
   593 F.2d 463 (2d Cir. 1979)........................................................................................ 5

*Life Techs., Inc. v. Clontech Labs., Inc.*,
   224 F.3d 1320 (Fed. Cir. 2000)................................................................................... 7

*Lopez v. Gap, Inc.*,
   11 Civ. 3185 PAE, 2012 WL 3186546 (S.D.N.Y. Aug. 2, 2012)....................................... 4, 7

*Mejia & Assocs., Inc. v. Int'l Bus. Machs.*,
   920 F. Supp. 540 (S.D.N.Y. 1996)................................................................................. 9

*O'Keefe v. Ogilvy & Mather Worldwide, Inc.*,
   590 F. Supp. 2d 500 (S.D.N.Y. 2008)............................................................................. 7

*Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 316 (S.D.N.Y. 2000),
   *aff'd sub nom.*
   *Paco Sport, Ltd. v. Paco Rabanne Perfumes*, 234 F.3d 1262 (2d Cir. 2000) ......................... 9

*Quality Serv. Grp. v. LJMJR Corp.*,
   831 F. Supp. 2d 705 (S.D.N.Y. 2011)............................................................................. 6

*Randa Corp. v. Mulberry Thai Silk, Inc.*,
   No. 00 CIV 4061 (LAP), 2000 WL 1741680 (S.D.N.Y. Nov. 27, 2000).............................. 10

*Star Indus., Inc. v. Bacardi & Co.,*
    412 F.3d 373 (2d Cir. 2005)......................................................................... 7

*Sunrise Home Juices, Inc. v. Coca-Cola Co.,*
    220 F. Supp. 558 (S.D.N.Y. 1963)............................................................... 3

*THOIP v. Walt Disney Co.,*
    690 F. Supp. 2d 218 (S.D.N.Y. 2010).......................................................... 10

*THOIP v. Walt Disney Co.,*
    736 F. Supp. 2d 689 (S.D.N.Y. 2010).......................................................... 10

## Other Authorities

3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:15 (4th ed.) ............................. 6

# PRELIMINARY STATEMENT[1]

As the undisputed facts show, Plaintiffs' claims fail for three independent reasons: (1) they do not have a protectable mark, as their "ibooks" imprint[2] is descriptive and has not acquired secondary meaning, (2) Apple has priority in the mark IBOOKS, and (3) there is no likelihood of confusion between their imprint and Apple's iBooks mark. Under *Celotex Corp. v. Catrett*, Plaintiffs may not rely on mere conclusory statements, but must come forward with sufficient factual evidence to support the elements of their case. *See* 477 U.S. 317, 323 (1986). Plaintiffs' Opposition Brief fails to do so.[3] It also notable for the way it ignores the significant change in sales, marketing, and press coverage since Plaintiffs bought Ibooks, Inc.'s assets in bankruptcy in 2006, and avoids discussing Plaintiffs' use of the imprint since then. This likely is because they know the facts reflect neither secondary meaning nor a likelihood of confusion.

# ARGUMENT

## I.   PLAINTIFFS DO NOT HAVE ANY TRADEMARK RIGHTS IN "ibooks."

### A.   It Is Undisputed That The Term "ibooks" Is Merely Descriptive.

Plaintiffs do not dispute the authenticity of the contemporaneous press release issued by Byron Preiss announcing the ibooks imprint, and stating that it was "the first publishing imprint

---

[1] For the factual background, Apple respectfully refers the Court to its 12/21/2012 Rule 56.1 Statement ( "Apple SUF"), its 1/25/2013 Response to Plaintiffs' Local Rule 56.1 Statement and Counter-Statement of Material Facts, and its 2/6/2013 reply to Plaintiffs' statement in opposition to the Apple SUF. "Opp." refers to Plaintiffs' brief in opposition to Defendant's summary judgment motion, dated 1/25/2013; "MSJ" refers to Defendant's summary judgment brief, dated 12/21/2012; "Colby Dec." refers to the Declaration of John T. Colby, Jr., dated 1/25/2013; "Kane Dec." and "Hampton Dec." refer to the Declarations of Siegrun D. Kane and Philip G. Hampton, II, respectively, dated 12/21/2012; "Opp. SUF" refers to Plaintiffs' statement of uncontroverted facts, dated 1/25/2013; "Jarrett 12/21 Dec.," "Jarrett 2/5 Dec." and "Jarrett 2/6 Dec." refer to the Declarations of Bonnie L. Jarrett, dated 12/21/2012, 2/5/2013, and 2/6/2013 respectively; "McDonald Rep." refers to the original report of Dr. McDonald. Deposition testimony is attached to the Jarrett 2/6 Dec. Capitalized terms are defined in the Apple SUF or the MSJ.

[2] As noted in Apple's MSJ, Plaintiffs have done nothing to develop their claims related to the "ipicturebooks" imprint (MSJ, 34, n. 23), and the opposition brief makes no mention of it. Summary judgment thus is warranted with respect to Plaintiffs' claims based on that alleged mark.

[3] Plaintiffs submitted the Declaration of John T. Colby, Jr., apparently to create factual issues, but it is unreliable and improper as it contradicts Mr. Colby's prior testimony. (Jarrett 2/6 Dec., ¶¶ 14-16.) *See Gennodie v. Metro N. Commuter R.R.,* No. 91 Civ. 8445 (DLC), 1995 WL 366442, at *6 (S.D.N.Y. June 20, 1995).

designed to take full advantage of the promotional and distribution potential of the internet."

(Opp. SUF, ¶ 6.) Instead, Plaintiffs conclusorily argue that the "i" could mean idea (Opp., 3), but

admit that Mr. Preiss "*never really told [Mr. Colby] what the 'i' in ibooks stood for. . . .*"[4]

(Colby Dec., ¶ 33 (emphasis added).) Thus, the contemporaneous documents are the *only*

evidence of "ibooks'" meaning, and they show that the "i" in "ibooks" refers to the internet.[5]

(Apple SUF ¶¶ 6-9.) Plaintiffs suggest that this issue cannot be decided on summary judgment,

but the relevant cases hold to the contrary. *See, e.g. Ideal World Mktg., Inc. v. Duracell, Inc.,* 15

F. Supp. 2d 239, 244 (E.D.N.Y. 1998), *aff'd,* 182 F.3d 900 (2d Cir. 1999); *Black & Decker Corp.*

*v. Dunsford*, 944 F. Supp. 220, 225 (S.D.N.Y. 1996).

### B. The Undisputed Facts Show "ibooks" Has No Secondary Meaning.

Contrary to Plaintiffs' assertion (Opp., 10), courts routinely determine on summary

judgment whether a merely descriptive mark has achieved secondary meaning where, as here,

the relevant factors—*i.e.,* surveys, sales success, advertising expenditures, media coverage,

attempts to plagiarize the mark, and length and exclusivity of Plaintiffs' use—are undisputed.

(MSJ, 7.) Those factors show that Plaintiffs' imprint has not achieved secondary meaning.

#### 1. Plaintiffs Did Not Offer A Secondary Meaning Survey.

Plaintiffs failed to provide a secondary meaning study, which they try to downplay by

referring to Mike Shatzkin's rebuttal report and testimony and fact witness Richard Freese's

testimony. (Opp., 13.) As Apple explains in its motion to exclude Mr. Shatzkin, he never

---

[4] This directly contradicts Mr. Colby's statement to Judge Forrest, in which he represented that "Byron [Preiss] decided that the 'i' mark would mean a sentient being like a robot has consciousness, so a book has consciousness and ibooks lives inside a reader." (Feb. 27, 2012 Tr., at 30:19-31:3.) Mr. Colby provided similar testimony during his 30(b)(6) deposition. (Colby 30(b)(6) Dep., 321:20-325:3.)

[5] Plaintiffs argue that the "i" in "ibooks" could refer to "idea" (Opp., 9), and cite Mr. Colby's 30(b)(6) testimony about ads in the back of "ibooks" books that allegedly refer to "a new idea that's brand new for 21st century publishing." (Opp. SUF, ¶ 10.) Tellingly, the ads, which Plaintiffs conveniently omit, *never* use the word "idea," but do refer to the promotion of books through the web. (Jarrett 2/6 Dec., ¶¶ 3-6.)

opined that Plaintiffs' imprint acquired secondary meaning, let alone that it had secondary meaning in January 2010 when Apple adopted its mark. As Mr. Freese is closely associated with Ibooks, Inc., Plaintiffs and Mr. Colby, his testimony does not reflect the views of "disinterested consumers" and is irrelevant to whether "ibooks" achieved secondary meaning. *See Jewish Sephardic Yellow Pages v. DAG Media, Inc.,* 478 F. Supp. 2d 340, 370 (E.D.N.Y. 2007).

## 2. Plaintiffs' Undisputed Sales Do Not Support Secondary Meaning.

Plaintiffs claim they "have had substantial sales success over the 14 years of their and their predecessors' existence." (Opp., 13.) As Apple has explained, the undisputed facts show that sales of "ibooks" books to distributors in the early 2000s led to massive returns and a bankruptcy liquidation. (MSJ, 9.) Since Plaintiffs acquired the imprint in 2006, annual sales have been *de minimis*, or even negative. (Apple SUF ¶¶ 50-54.) Putting aside the inherent unreliability of the various sales figures (Jarrett 2/5 Dec., ¶¶ 26-27; Jarrett 2/6 Dec., ¶¶ 17-21), they show that in the best year since 2006, sales were only        . (Apple SUF ¶¶ 50-54.) Courts have found no secondary meaning on summary judgment even with higher sales. *See Ideal World,* 15 F. Supp. 2d at 246 ($1 million over five years insufficient); *Sunrise Home Juices, Inc. v. Coca-Cola Co.*, 220 F. Supp. 558, 559-61 (S.D.N.Y. 1963) (sales increasing from $30,000 in 1952 to $600,000 in 1963 insufficient); *see also Brandwynne v. Combe Int'l, Ltd.,* 74 F. Supp. 2d 364, 382 (S.D.N.Y. 1999) ($100,000 in year suit was filed insufficient). In any event, sales alone cannot establish secondary meaning. *See Ergotron, Inc. v. Hergo Ergonomic Support Sys., Inc.,* No. 94 Civ. 2732, 1996 WL 143903, at *8 (S.D.N.Y. Mar. 29, 1996).

## 3. The Advertising And Media Coverage For "ibooks" Is Undisputed.

Plaintiffs again try to bolster their claims by relying almost exclusively on the pre-2006 activities of Ibooks, Inc. They do not dispute that from 2007 to 2011, they spent a ***total*** of less than        on marketing activities for both the "ibooks" and "ipicturebooks" imprints (Opp.

3

SUF ¶ 67; Apple SUF ¶ 67), or that consumer advertising featuring the "ibooks" mark has been virtually non-existent. Seeking to create a fact issue where there is none, Plaintiffs assert that *six print "advertisements"* show that "ibooks" has achieved secondary meaning. (Chattoraj Dec., Ex. 21.) Those ads appear to have been directed to the trade, created before 2006, and/or intended for the U.K. market, and thus are of little or no relevance. (Jarrett 2/6 Dec., ¶¶ 7-12.) In any case, Plaintiffs have presented no information about where or when (if ever) those "ads" appeared, or to whom they were distributed. (*See id.*) Similarly, Plaintiffs assert that most of the "ibooks" marketing was done by distributors through a co-op ad program. (Opp. SUF, ¶ 68.) But Plaintiffs offer no examples of co-op ads, and fail to say how much was *spent* on them. (*See id.*) Even Mr. Freese could not "specifically remember any advertising." (Freese Dep. 96:8-16.) In short, the purported six print "ads" and co-op advertising program cannot establish secondary meaning. *See Lopez v. Gap, Inc.,* 11 Civ. 3185 PAE, 2012 WL 3186546, at *18 (S.D.N.Y. Aug. 2, 2012); *Jewish Sephardic Yellow Pages,* 478 F. Supp. 2d at 372.

As for media coverage, Plaintiffs do not dispute that almost all of it was in *Publishers Weekly*, a trade publication. Instead, they point to a *single* 2002 Newsarama.com article mentioning the "ibooks" imprint. (Opp. SUF ¶ 99; Apple SUF ¶ 99.) That lone reference highlights the imprint's limited exposure. Nor do Plaintiffs dispute that neither January 2010 Google searches nor a February 2012 Thomson Compumark common law search revealed their use of "ibooks." (Opp. SUF ¶¶ 95; 227-231; Apple SUF ¶ 95; 227-231.) This factor weighs heavily against Plaintiffs. *See Jewish Sephardic Yellow Pages,* 478 F. Supp. 2d at 371-72.

### 4. It Is Undisputed That There Have Been No Attempts To Plagiarize Plaintiffs' Alleged Mark And That Their Use Has Not Been Exclusive.

Plaintiffs admit they are unaware of any attempts to plagiarize the alleged "ibooks" mark. (Opp., 13.) Regarding exclusivity of use, Plaintiffs argue that the four examples of other uses of

"ibooks" cited by Apple in its opening brief are irrelevant.  (*See id.*)  In fact, two of the marks

Apple cited—the IBOOK marks owned by Family Systems and the University of Illinois—were

cited by the PTO against Ibooks, Inc. when it tried to register "ibooks."  (Apple SUF ¶ 131.)

Plaintiffs do not dispute that the third mark, "ABDO iBooks," was used in connection with

interactive books for young readers (Opp. SUF, ¶ 110; Apple SUF ¶ 110), which are in the same

market as Plaintiffs' "ibooks."  Therefore, these factors also weigh against Plaintiffs.

## II.      APPLE'S REGISTERED IBOOKS TRADEMARK HAS PRIORITY.

### A.      The Assignment From Family Systems Is Valid.

Plaintiffs cannot meet their burden to show the IBOOK assignment is invalid.  *See*

*Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1062-63 (2d Cir.

1985); *eMachines, Inc. v. Ready Access Memory, Inc.,* No. EDCV 00-00374-VAPEEX, 2001

WL 456404 (C.D. Cal. Mar. 5, 2001), 2001 WL 456404, at *11.  Plaintiffs seem to argue that

Apple's software is not substantially similar to that of Family Systems because Apple created it

before seeking to buy the mark.  (Opp., 15.)  The law is to the contrary.  *See Glamorene Prods.*

*Corp. v. Procter & Gamble Co.,* 538 F.2d 894, 895 (C.C.P.A. 1976) (assignment valid where

assignee "work[ed] on its own dry cleaning detergent" before buying mark).  Plaintiffs also

argue the assignment was invalid as Apple did not continue Family Systems' business (Opp.,

15), but that is a red herring as Apple is not relying on the continuity test.[6]

Unable to dispute that Apple and Family Systems both used IBOOK(S) for "computer

software used to support and create interactive, user modifiable electronic books," as described

in the '634 Registration, and are thus substantially similar, Plaintiffs suggest that description of

---

[6] *Levitt Corp. v. Levitt,* on which Plaintiffs rely, involved an assignor's continued use of a mark post-sale, not the validity of an assignment.  *See* 593 F.2d 463 (2d Cir. 1979).

goods is irrelevant.  (Opp., 16.)  But Family Systems' Dr. Goldhor testified that "everything" it

"did with the mark" fell "comfortably under [that] description."  (Goldhor Dep., at 72:14-73:18;

*see also id.,* 80:19-24.)  Moreover, Family Systems chose that description when it applied for its

trademark.  Family Systems' and Apple's e-reader software products are substantially similar

such that consumers will not be deceived or harmed, and thus the assignment is valid.[7]  *See*

*Defiance Button,* 759 F.2d at 1059; *Becoming, Inc. v. Avon Prods., Inc.*, No. 01 Civ. 5863, 2001

WL 930794, at *5 ( S.D.N.Y. Aug. 15, 2001).

> **B.**     **Apple Did Not Commit Fraud on the PTO.**

Fraud on the PTO requires (1) a knowingly false statement to the PTO and (2) proof of

intent to deceive. *See In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009); *see also Quality*

*Serv. Grp. v. LJMJR Corp.*, 831 F. Supp. 2d 705, 710 (S.D.N.Y. 2011).  Neither is present here.

First, Apple's statements to the PTO were not false, as confirmed by the former head of

the PTO.  (Hampton Dec., Ex. 1, 18-22.)  As noted above, Apple's and Family Systems' e-reader

products are substantially similar, and thus Apple truthfully said it was using the mark for the

same product and its use was a continuation of Family Systems' use.  (*See supra* § II.A.)  It is

undisputed that the specimens accurately depicted Apple's use and that the PTO accepted the

specimens.  (Opp. SUF ¶¶ 174-176; Apple SUF ¶¶ 174-176.)  Moreover, Apple properly stated

IBOOKS was first used in commerce on October 27, 2000 because, via the assignment, it

"stepp[ed] into the shoes" of Family Systems and acquired all its rights, including its priority

date.  *See* 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:15 (4th ed.).

---

[7] *Boathouse Group, Inc. v. Tigerlogic Corp.,* 777 F. Supp. 2d 243 (D. Mass. 2011), is inapposite.  The assignor used the mark for a "plugin," "an optional feature designed to work with specific software [that] had limited functionality."  (Opp., 17.)  The assignee used the mark for social-network interaction software.  *See Boathouse,* 777 F. Supp. 2d at 251-52.  Thus, the two products provided different functionality to consumers.

Nor was Apple's request to add an "s" to IBOOK fraudulent. (Opp., 21-22.) Even Plaintiffs' purported expert conceded that "other than the issue of claiming ownership [of the registration,] I have no problem with the fact that [Apple] amended the mark from iBook to plural iBooks." (Opp. SUF ¶ 171.) Plaintiffs still argue Apple's statements regarding the "s" were misleading (Opp., 21), but offer no factual support. In any case, Apple's statements about the impact of the "s" on consumers were its opinions, not factual statements. (Kane Dec., Ex. 1, ¶ 82.) *See Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1326 (Fed. Cir. 2000) (no fraud where "inventors merely advocated a particular interpretation"). Thus, there is no evidence Apple made false statements or concealed information about its use of IBOOKS.[8]

Summary judgment for Apple also is proper because there is no evidence it intended to deceive the PTO. Plaintiffs assert Apple "purposely concealed information" and acted with "intent to mislead," but provide no factual basis for those assertions. (Opp., 20, 22.) Absent any evidence Apple had an intent to deceive, Plaintiffs' claim must fail. *See In re Bose Corp.*, 580 F.3d at 1245; *Levi Strauss & Co. v. Esprit US Distrib. Ltd.*, 588 F. Supp. 2d 1076, 1084 (N.D. Cal. 2008) (finding no fraud on summary judgment where there was no evidence of intent).

III.     **THERE IS NO LIKELIHOOD OF CONFUSION.**

Plaintiffs must show "'a probability of confusion, not a mere possibility.'" *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 519 (S.D.N.Y. 2008) (quoting *Star Indus., Inc. v. Bacardi & Co.,* 412 F.3d 373, 383 (2d Cir. 2005)). "Triable factual issues relating to any individual factor are relevant to the analysis, but they do not preclude a finding that

---

[8] Plaintiffs argue that Apple's April 7, 2010 intent to use application for IBOOKS was fraudulent because it claimed to use IBOOKS on the goods that it later deleted from its application. (Opp., 22-24.) First, Apple's application was an *intent-to-use* application and therefore did not claim the mark was "in use" on *any* of the goods listed in the application. (Jarrett 12/21 Dec., ¶ 12.) Second, this claim was not alleged in Plaintiffs' Amended Complaint and cannot be raised for the first time in opposition to summary judgment. *See Lopez,* 2012 WL 3186546, at *5.

summary judgment is appropriate with respect to the existence of a likelihood of confusion." *Advance Magazine Publishers, Inc. v. Norris*, 627 F. Supp. 2d 103, 113 (S.D.N.Y. 2008).

### A.    Apple Did Not Saturate Plaintiffs' Market

There is no likelihood that Apple would saturate Plaintiffs' market because they operate in very different markets—Apple, a technology company offering hardware and software, admittedly is not perceived as a publisher (Apple SUF ¶ 180), while Plaintiffs, book publishers, are not in the computer hardware and software fields.  (MSJ, 23.)  Rather than addressing this distinction directly, Plaintiffs merely state "[Apple's] contention is disposed of below."  (Opp., 26.)  However, they only discuss the respective markets in their "proximity of goods" analysis, arguing that the goods are *complementary* (*id.,* 29), effectively conceding the products do not compete.  The only overlap they claim exists stems from Apple's sale of books via the iBookstore.  (*Id.,* 28-29.)  This claim is without merit because Plaintiffs are not book sellers, but instead publish books sold by others.  (Colby 30(b)(6) Dep. 94:11-15; 135:16-136:16.)

### B.    Plaintiffs' Alleged "ibooks" Mark Is Weak.

Plaintiffs' alleged mark is descriptive and thus conceptually weak.  *See Advance*, 627 F. Supp. 2d at 116.  They also *admit* it is commercially weak.  (Opp., 27.)  This factor favors Apple. *See Kinbook, LLC v. Microsoft Corp.*, 866 F. Supp. 2d 453, 466 (E.D. Pa. 2012) *aff'd,* 12-1488, 2013 WL 116516 (3d Cir. Jan. 10, 2013); *Lang v. Ret. Living Publ'g Co.,* 949 F.2d 576, 581 (2d Cir. 1991); *Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281, 294-95 (S.D.N.Y. 2003).

### C.    Plaintiffs' Alleged Mark And Apple's Mark Are Not Similar.

Plaintiffs and Apple have different logos and use different fonts, Apple's product is available only on Apple-branded devices, and source-identifying information about Plaintiffs appears within their books.  (Opp. SUF, ¶¶ 186-87; 190-92; 196; Apple SUF 186-87; 190-92; 196.)  Plaintiffs use Dr. McDonald's flawed survey to argue that these purportedly "small

differences do not have any effect on consumers" (Opp., 27), but she did not show respondents the Parties' logos, fonts, house marks, or other related information, and so did not test perceptions of differences between the imprint and Apple's mark. (McDonald Rep. App. B.) This factor favors Apple. (MSJ, 26-28.) *See also Brown v. Quiniou,* 744 F. Supp. 463, 470-71 (S.D.N.Y. 1990).

### D.  The Products Are Not Proximate Because They Do Not Compete.

This factor asks "whether and to what extent the two products compete with each other."[9] *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 316 (S.D.N.Y. 2000) (internal citation omitted), *aff'd sub nom. Paco Sport, Ltd. v. Paco Rabanne Perfumes*, 234 F.3d 1262 (2d Cir. 2000). The Parties' products do not compete: Apple is a technology company using iBooks for downloadable e-reader software while Plaintiffs are publishers using "ibooks" as an imprint. (Apple SUF ¶¶ 178, 195, 198.) Apple, through its iBookstore, offers a marketplace for selling books, but it admittedly is *not* perceived as a book publisher. (Opp. SUF ¶ 180, 195)

### E.  There Is No Evidence Plaintiffs Intend To Bridge The Gap.

Plaintiffs claim they "would have had the opportunity to build . . . a brand in the digital space" and Mr. Colby "was prepared to make that leap," but never say they had plans to develop e-book reading software (Opp., 30), or produced documents evidencing such a plan. (Apple SUF ¶ 202.) Thus, this factor favors Apple. *See Mejia & Assocs., Inc. v. Int'l Bus. Machs.,* 920 F. Supp. 540, 549 (S.D.N.Y. 1996) (plaintiff offered evidence that was "no more than bare ideas").

### F.  There Is No Evidence Of Actual Confusion.

Apple offered two methodologically sound surveys showing confusion rates under 1.5%.

---

[9] Plaintiffs strain to find proximity, citing a few internal and third party documents referring to e-books as "ibooks" (Opp. SUF, ¶¶ 45-48 (pp. 58-60) and a quote from Steve Jobs, without attaching the quote. The exhibits they do attach make clear iBooks refers to the app only, while e-books are referred to as books. (Chattoraj Dec., Ex. 111.) There is no evidence Apple ever referred to books as "iBooks" in its external advertising and marketing materials.

(Apple SUF ¶¶ 213, 215.)  Plaintiffs' only competing evidence of actual confusion is Dr.

McDonald's fundamentally flawed and inadmissible surveys, as explained in Apple's motion to

exclude.[10]  *See THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 231 (S.D.N.Y. 2010).  This

factor favors Apple.  *See THOIP v. Walt Disney Co.*, 736 F. Supp. 2d 689, 713 (S.D.N.Y. 2010).

### G.  Apple Adopted Its iBooks Mark In Good Faith.

Plaintiffs do not argue that Apple adopted the IBOOKS mark to trade off Plaintiffs'

goodwill.  (Opp., 32.)  Instead they claim, absurdly, that because Apple has not waived the

attorney-client privilege, it cannot offer evidence it proceeded in good faith by conducting a

thorough trademark search and detailed clearance process that as a factual matter did not reveal

Plaintiffs' existence.  (*See id.*)  As trademark searches are "factual in nature," not privileged,

they can be used to demonstrate good faith even when advice of counsel is not claimed.  *See*

*THOIP,* 736 F. Supp. 2d at 700 n. 73; 713-14.  Thus, this factor favors Apple.

### H.  Apple's Quality Is High and Plaintiffs' Customers Are Sophisticated.

Plaintiffs concede that the quality of the goods factor is neutral.  (MSJ, 34; Opp., 32.)

Regarding the sophistication factor, they do not dispute that the relevant customers are

sophisticated, and thus that factor also favors Apple.  (MSJ, 31; Opp., 31.)

### CONCLUSION

Apple respectfully requests that the Court grant Apple's motion for summary judgment

on all of Plaintiffs' claims and requests for relief.[11]

---

[10] Plaintiffs concede that, contrary to the testimony of Mr. Colby, their 30(b)(6) witness, the e-mails from his
associates regarding Apple's iBooks software are not evidence of actual reverse confusion.  (Opp. SUF, ¶ 205.)
[11] Plaintiffs admit that the state law claims are covered by the same standard as the federal claims and that they are
"no longer press[ing]" the conversion claim.  (Opp., 33, n. 2.)  Thus, this court can dismiss all of the state law
claims.  *See Info. Superhighway, Inc. v. Talk Am., Inc.,* 395 F. Supp. 2d 44, 56 (S.D.N.Y. 2005); *Randa Corp. v.
Mulberry Thai Silk, Inc.,* No. 00 CIV 4061 (LAP), 2000 WL 1741680, at *3 (S.D.N.Y. Nov. 27, 2000); *Big Star
Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 217 (S.D.N.Y. 2000).

Date: February 6, 2013                    Respectfully submitted,

                                          *s/ Dale M. Cendali*
                                          _____
                                          Dale M. Cendali
                                          Claudia Ray
                                          Bonnie L. Jarrett
                                          KIRKLAND & ELLIS LLP
                                          601 Lexington Avenue
                                          New York, New York 10022
                                          Tel: 212-446-4800
                                          Fax: 212-446-4900

Perry J. Viscounty                        Jennifer L. Barry
LATHAM & WATKINS LLP                       LATHAM & WATKINS LLP
140 Scott Drive                           600 West Broadway, Suite 1800
Menlo Park, CA 94025                      San Diego, CA 92101-3375
Tel: 714-540-1235                         Tel: 619-236-1234
Fax: 714-755-8290                         Fax: 619-696-7419

                                          ATTORNEYS FOR DEFENDANT